## OVERSEERS OF NEWTON *against* OVERSEERS OF GLOUCESTERTOWN.

### ON CERTIORARI.

No bill of exceptions lies, in settlement cases, to the proceedings of the sessions.

The Supreme Court cannot compel the sessions to state the case, nor receive affidavits to prove that they have acted improperly.

*Certiorari* to the justices of Sessions of Gloucester, to remove an order of two justices, adjudging the settlement

of Rebecca Adams, in Gloucestertown, from which Glouces-
town appealed, and the sessions, on hearing, quashed the
order of the two justices.

To this *certiorari* the sessions made a general return, that
on hearing the proofs, &c., they quashed the order of the
two justices, with costs, &c.

This return was made to April term, 1797, when a rule
was obtained by the counsel for Newton, to shew cause why
this order of the sessions should not be set aside.

In support of this rule, at this term, *Griffith* and *Daven-
port*, offered to read their own affidavits, which stated, that
on the hearing of the appeal before the sessions, they, in
order to prove that the place of the pauper's birth and set-
tlement was Gloucestertown, offered the pauper herself,
and one Hannah Fortune, as witnesses to this point; that
the counsel for Gloucestertown objected to their evidence
because they were slaves, and had never been legally man-
umitted. To support their competency, evidence was pro-
duced shewing that they were both manumitted, but there
was no evidence that the bond for indemnifying the town-
ship had been previously given by their respective masters,
and, on this ground, the sessions refused to admit their tes-
timony.

*Woodruff*, (attorney general,) and *Lawrence* objected to
the reading of these affidavits. In a case of this kind, the
court is precluded from receiving any evidence of what took
place before the sessions, except their return. In *Oulton* v.
*Wells, Bur. Sett. Ca.* 64, 2 *Botts*, 850, a question of the same
kind occurred, and Lord Hardwicke and the whole court
held, that though the determination was very plainly
against law, they could not do what justice evidently
required. If the justices will not state the real facts of
the case, there is no mode of compelling them to do it. In
the *King* v. *Preston*, 2 *Botts.* 827, 2 *Strange.* 1040, *Bur.
Sett. Ca.* 77, the language of Lord Hardwicke is applicable

to this case. "It has been much wished that a bill of exceptions would lie to the justices at their sessions, because otherwise it may sometime happen that they may determine in an arbitrary manner, contrary to the resolutions of the courts of law; for if the justices will not state the facts specially, though requested so to do when the matter is doubtful, this is very blameable conduct in them."

*Griffith* and *Davenport* for the motion. The rule is to set aside the order of sessions, not to confirm the order of the justices, and the object is, to have the cause sent down again to the sessions, and the evidence in question admitted on a *mandamus*.

The facts stated in the affidavits, which serve as the foundation for the present application, must be taken as true in the absence of all contradictory proof. If this case, then, be properly laid before the court, is it possible to imagine one in which the rights of a party have been more evidently outraged? and can there be a grosser libel upon the administration of law in this country, than to say, that such indefensible proceedings are without redress?

The question is simply, if the sessions have done a manifest wrong in rejecting legal and unobjectionable testimony, whether, from a mistake of the law, or from ignorance or partiality, and then, in order to prevent the party injured from obtaining redress, refuse to state the facts of the case, whether this court may not vacate the proceedings upon *certiorari*, on satisfactory proof of the erroneous judgment?

This is a species of jurisdiction clearly incident to this court; it has been recognized and exercised in innumerable instances, in controlling the proceedings of justices of the peace, surveyors of the highways, judges of elections, &c. It is the height of absurdity to say, that the exercise of the right of overseeing and rectifying the errors of inferior tribunals is to depend altogether upon the pleasure of these inferior tribunals; that unless they choose to state the case, the injured party is remediless.

Meredith v. Banks.

The authorities that have been cited, go to prove that the superior court will not investigate the merits of the case; and this is not questioned. They will not assume the powers of an appellant jurisdiction, and declare where the settlement legally is; but, as a superintending jurisdiction, they will and ought to see that these inferior tribunals exercised their powers justly and regularly. In this case, this court is not called upon to decide the question, whether the reversal of the order of justices was correct or incorrect? but here is a gross irregularity complained of, a refusal to hear legal testimony, and the object is to compel the sessions to receive the testimony. This distinction is recognized in *Lofft* 184, and is reconcilable to reason and common sense.

KINSEY C. J. delivered the opinion of the court. There is no difficulty in saying, that the sessions have done wrong in rejecting these witnesses, and were highly reprehensible in not stating the points which arose in the case; yet we think it a settled point, that no bill of exceptions lies to their proceedings in settlement cases, and of course we cannot receive affidavits, to prove that they have acted erroneously.

We have every inclination to rectify these improper and illegal proceedings, but we are concluded by the return.

Order of sessions affirmed.*

---

* *Sed vide Overseers of Mendham* v. *Morris,* 2 *South.* 810, that Quarter Sessions will be ordered to send up state of case.